674 F.2d 791
 PUBLIC POWER COUNCIL; City of Seattle, City Light
Department; Central Lincoln Peoples' Utility District; City
of Eugene, by the Eugene Water & Electric Board; City of
Tacoma, Department of Public Utilities; Clatskanie Peoples'
Utility District; Public Utility District No. 1 of Chelan
County; Public Utility District No. 1 of Snohomish County, Petitioners,
and
Pacific Power & Light Company, Portland General Electric
Company, Puget Sound Power & Light Company, the Washington
Water Power Company, Idaho Power Company, the Montana Power
Company, Utah Power & Light Company, CP National
Corporation, and the Columbia River Peoples' Utility
District, Petitioner-Intervenors,
v.
Peter JOHNSON, as Administrator of the Bonneville Power
Administration, Department of Energy, and James Edwards, as
Secretary of the Department of Energy, and the United States
of America, Respondents,
and
Aluminum Company of America, the Anaconda Company, Crown
Zellerbach Corporation, Elkem Metals Company, Georgia
Pacific Corporation, Hanna Nickel Smelting Company, Intalco
Aluminum and Chemical Corporation, Kaiser Aluminum and
Chemical Corporation, Martin Marietta Aluminum, Inc., Oregon
Metallurical Corporation, Reynolds Metal Company, and
Stauffer Chemical Company, Respondent-Intervenors.
 No. 81-7806.
 United States Court of Appeals,
Ninth Circuit.
 April 13, 1982.
 
 Before KENNEDY, NELSON, and REINHARDT, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 The Bonneville Power Administration (BPA) has moved to quash certain subpoenas issued for depositions and other discovery materials. Petitioners seek the discovery in their action brought directly in this court to challenge certain actions of the BPA. It is necessary to expedite consideration of the underlying case on the merits and to rule immediately upon the question whether petitioners are entitled to discovery. We heard argument on the discovery motion on April 6, 1982. By order of April 8, 1982, we denied the motion to quash and directed discovery to proceed. We discuss briefly the considerations that led to our conclusions.
 
 
 2
 The BPA has been the federal agency entrusted since 1937 with marketing the electric power generated and acquired by federal projects and plants in the Pacific Northwest. See H.R.Rep.No.976, 96th Cong., 2d Sess., Part II, 23-24, reprinted in (1980) U.S.Code Cong. & Ad.News 5989, 5989-90 (hereinafter "House Report"). The increased demands on the low-cost federal power in the Pacific Northwest, see id. at 24-27, (1980) U.S.Code Cong. & Ad.News at 5990-92, led to the passage of the Pacific Northwest Electric Power Planning and Conservation Act, Pub.L.No. 96-501, 94 Stat. 2697 (1980) (to be codified at 16 U.S.C. § 839 et seq.) ("Regional Act"), which became effective on December 5, 1980. The Act was passed "to assure the Pacific Northwest of an adequate, efficient, economical, and reliable power supply," and to conserve electric power and develop renewable resources within the Pacific Northwest. Section 2(1), (2), 16 U.S.C.A. § 839(1), (2) (West Supp.1982). The Act directed the BPA to allocate federal power and to negotiate initial long-term contracts to various classes of customers, including public utilities and direct service industrial customers (DSIs), within nine months after the effective date of the Act. Section 5(g)(1), 16 U.S.C.A. § 839c(g)(1) (West Supp.1982). The BPA negotiated with its customers, held limited public hearings, and offered twenty-year contracts to its customers on August 28, 1981.
 
 
 3
 In a previous case, public utility customers challenged the power contracts offered to the DSIs by the BPA. Central Lincoln Peoples' Utility District, et al. v. Johnson, 673 F.2d 1076 (9th Cir. 1982) (Central Lincoln I ). The case before us was initiated by the statutory preference customers of BPA, namely, publicly-owned and cooperative utility companies, including Public Power Council. They contend, apparently, that contracts offered by the BPA to them did not comply with the statute, that the contracts were not negotiated as to all relevant terms, and that negotiations by BPA were in bad faith. Petitioners assert that a complete administrative record is required for fair judicial review of their claims. They insist a complete record is not yet before the court, and they argue the record will not be complete unless it contains testimony of two officials of the BPA who negotiated the contracts and certain documents involved, including notes and memoranda of negotiating sessions. They argue as well that such supplemental material is necessary to interpret complex provisions of the contracts.
 
 
 4
 The BPA brought this motion to quash the discovery on the ground that our scope of review is circumscribed and limited to the agency record. The agency's position is that the contracts offered to petitioners and the draft proposals that preceded them constitute, essentially, the entire record needed for us to determine whether the contracts were in fact negotiated, and whether they were formulated within the agency's broad discretion. These contracts are presently in the record and are, apparently, of great complexity. The petitioner power companies assure us that a reading of the contracts themselves would not adequately inform us either of the negotiation process that the BPA used or the respects in which petitioners seek to challenge it. The DSIs have intervened as respondents in this suit; private utilities concerned with the precedential impact of the case have intervened as petitioners.
 
 
 5
 Although the agency eventually may prevail as to its position of what should constitute the record upon review, there are compelling reasons to allow the discovery to proceed at this stage, reserving for the panel on the merits the ultimate determination of what should constitute the record before the court.
 
 
 6
 The underlying proceeding to review the BPA's offer of the contracts to the power companies is brought under our original jurisdiction to review final agency actions and decisions under section 9(e)(5) of the Act, 16 U.S.C.A. § 839f(e)(5) (West Supp.1982). We have recognized that this original jurisdiction raises procedural problems that must be resolved on a case-by-case basis. Central Lincoln I, at 1460, at ----. We adhere to that determination and decline at this juncture to set forth categories of cases under the Act in which discovery might be appropriate.
 
 
 7
 The BPA relies on the section of the Act characterizing enumerated agency actions, including "sales" of electric power, as final actions for purposes of the Administrative Procedure Act (APA), section 5(e)(1), 16 U.S.C.A. § 839c(e)(1) (West Supp.1982). The statute provides that the "record upon review of such final actions shall be limited to the administrative record compiled in accordance with this Act," section 5(e)(2), 16 U.S.C.A. § 839c(e) (2) (West Supp.1982). In Central Lincoln I we held that the contracts offered to the DSIs constituted sales and were to be reviewed by the standard of whether they were arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A) (1976). Central Lincoln I, at 1461, at ----. This suit involves different types of challenges to the BPA's actions, and the parties contend that different APA standards of review should apply. We need not at this stage, however, decide either the scope of the record or scope of review to be applied to petitioner's claims on the merits of the case.
 
 
 8
 Rather, in considering petitioner's discovery requests, we recognize that even when judicial review is confined to the record of the agency, as in reviewing informal agency actions, there may be circumstances to justify expanding the record or permitting discovery. The broadest exception to the general rule that review is to be restricted to the record certified by the agency is one which permits expansion of the record when necessary to explain agency action. When there is "such a failure to explain administrative action as to frustrate effective judicial review," the court may "obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary," Camp v. Pitts, 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam); see Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); Environmental Defense Fund, Inc. v. Costle, 657 F.2d 275, 285 (D.C.Cir.1981); Asarco, Inc. v. U. S. E. P. A., 616 F.2d 1153, 1160 (9th Cir. 1980) (reviewing court should go outside administrative record to consider evidence relevant to the substantive merits of the agency action "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds for decision"); Doraiswamy v. Secretary of Labor, 555 F.2d 832, 842 (D.C.Cir.1976); Appalachian Power Co. v. Environmental Protection Agency, 477 F.2d 495, 507 (4th Cir. 1973). Because this exception is so broad in its formulation, courts have been reluctant to invoke it. When there is a need to supplement the record to explain agency action, the preferred procedure is to remand to the agency for its amplification, see, e.g., Asarco, supra; Appalachian Power Co., supra. There are instances, however, in which the courts admit certain testimony in the judicial proceeding, see Camp v. Pitts, supra, or provide limited discovery when serious gaps would frustrate challenges to the agency's action, cf. Sierra Club v. Costle, 657 F.2d 298, 390 n.450 (D.C.Cir.1981); Doraiswamy, 555 F.2d at 842.
 
 
 9
 In addition to the exception applied when it is necessary to explain agency action, there is a further exception to the general rule that agency actions are to be judged on the agency record alone, without discovery. This exception arises when it appears the agency has relied on documents or materials not included in the record. This has been acknowledged as a qualification to or explication of the rule that judicial review is based upon the full administrative record in existence at the time of the agency decision, see Camp v. Pitts, 411 U.S. at 142, 93 S.Ct. at 1244; Overton Park, 401 U.S. at 420, 91 S.Ct. at 825. Some courts have thus permitted discovery when those challenging agency action have contended the record was incomplete, in order to provide a record of all documents and materials directly or indirectly considered by the agency decisionmakers. See NRDC v. Train, 519 F.2d 287, 292 (D.C.Cir.1975); Appalachian Power Co., 477 F.2d at 507; Exxon Corp. v. Department of Energy, 91 F.R.D. 26, 32-33 (N.D.Texas 1981) ("the whole record is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record"; "the court must look to all the evidence that was before the decision-making body") (emphasis in original); Tenneco Oil Co. v. Department of Energy, 475 F.Supp. 299, 317 (D.Del.1979) ("It strains the Court's imagination to assume that the administrative decision-makers reached their conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals....").
 
 
 10
 There are also cases in which supplementation of the record through discovery is necessary to permit explanation or clarification of technical terms or subject matter involved in the agency action under review. In Asarco, 616 F.2d at 1160, we noted that the court could go outside the administrative record to consider evidence for background information. See Bunker Hill Co. v. EPA, 572 F.2d 1286, 1292 (9th Cir. 1977). Other courts also have approved "contemporaneous construction" discovery in some form, to assist the court in reviewing agency interpretations. See, e.g., Exxon, 91 F.R.D. at 40 (citing cases); Tenneco Oil Co., 475 F.Supp. at 318.
 
 
 11
 Petitioners have alleged circumstances that arguably might justify supplementation of the proferred agency record under each of these three exceptions. First, they contend the negotiation procedure was inadequate and the basis for and origin of certain contract terms are unexplained. Second, they claim the BPA relied on various memoranda and notes of negotiating meetings which are not now a part of the record. Third, they seek discovery to understand certain allegedly complex and vague contract clauses. At this stage we do not decide whether the record ultimately may be expanded on these bases, but only that petitioners' arguments in support of limited discovery are not insubstantial or frivolous. Ordinarily, that might not be sufficient to justify a discovery order. However, there are compelling reasons why in the case before us we permit limited discovery to proceed.
 
 
 12
 As we have said, remand to the agency may satisfy the request for expanding the record in most cases of the type mentioned above. That course is not available to us here. The challenges to the BPA's negotiations and the jurisdictional posture of this case under the Regional Act present novel issues that cannot be resolved simply by relying on past cases reviewing other various types of informal administrative actions. Principles of administrative law and the scope of judicial review evolve over a period of time as courts develop a balance between an agency's concern over its implementing discretion and our need to review and understand the subject of agency action. We have had no experience with the BPA's activities mandated by the Regional Act, and the Act provides little guidance in defining "negotiation."
 
 
 13
 We are particularly influenced by the emphasis of the entire structure of the Regional Act on prompt action. The Act was drafted to address the urgent need to allocate fast-shrinking power resources in the Pacific Northwest. House Report, supra, at 25-27, (1980) U.S.Code Cong. & Ad.News at 5990-93. The Act commanded the BPA to formulate its contracts within nine months, and allowed only one year for acceptance. Section 5(g)(5), 16 U.S.C.A. § 839c(g)(5) (West Supp.1982). The Act streamlined judicial review to further facilitate the urgent reallocation of power. Challenges to all actions under the Act are to be brought directly to the United States Court of Appeals for the region, and such actions are to be filed within ninety days of the time the agency action or decision is deemed final. Section 9(e)(5), 16 U.S.C.A. § 839f(e)(5) (West Supp.1982). We have a short period to review the merits of petitioners' claims. We must avoid any delay arising from incomplete allegations or a subsequent need to remand to the agency or to expand the record. By permitting discovery, we facilitate expeditious review of the agency's contract offers, as the merits panel will be provided with fully-developed contentions and a complete record, should it deem resort to the supplemental material appropriate for its decision. The panel on the merits is free to strike any portion of the record, but we must at this stage insure there will be a full presentation of the issues to it.
 
 
 14
 We are influenced as well by the significance of the contracts under review. These contracts will shape the allocation of relatively low-cost power from the extensive federal electric power system in the Pacific Northwest for a period of twenty years. The allocations and preferences determined by the BPA will affect long-term planning and construction by public and private utilities and private industrial customers. The statute commands one-time offers and negotiations. Petitioners are entitled to serious consideration of their challenges to the contracts offered under the Act. Without discovery, petitioners may not be able to formulate coherent issues for constructive review.
 
 
 15
 Finally, we note that courts will go beyond the agency record when agency bad faith is claimed. Petitioner's cause of action alleges bad faith in the negotiation process, and petitioners are unable to develop and present this novel and complex claim on the basis of the drafts of the contracts alone. Normally there must be a strong showing of bad faith or improper behavior before the court may inquire into the thought processes of administrative decisionmakers, Overton Park, 401 U.S. at 402, 91 S.Ct. at 814. Though petitioners have not met that burden, for the reasons discussed above petitioners should proceed with discovery to develop these claims, as we do not foreclose here any legal grounds for challenging the agency action.
 
 
 16
 We do not decide the extent to which the agency must justify its offered contracts or its negotiation procedures, just as we do not decide the scope of the record to be used by the panel on the merits.
 
 
 17
 These are the considerations that shaped our order of April 8, 1982, which was as follows:
 
 
 18
 The motion by respondent Bonneville Power Administration to quash subpoenas and to stay discovery is denied. The court makes the following further orders respecting discovery.
 
 
 19
 The court appoints Magistrate George E. Juba of the District of Oregon as Master to supervise the provisions of this order and to make any modifications or amendments that are required to implement it and to implement further the terms of any memorandum or opinion that the court may issue in connection with this motion. The Master may refer any further dispute to this panel, which retains jurisdiction in the case until the panel which is to hear the case on the merits has been designated.
 
 
 20
 Based on representations of petitioners that the discovery sought is not extensive and can be completed expeditiously, the two depositions previously noticed and the documentary discovery requested shall be completed on or before May 5, 1982. Magistrate Juba may make any necessary orders to confine the scope of discovery so that it can be completed within that period. If the respondents[1] consider discovery necessary to meet issues raised by the petitioners, they may make application to Magistrate Juba, who shall attempt to accommodate any such discovery requests within the time period here set forth.
 
 
 21
 The petitioners' opening brief is due on or before May 17, 1982. Respondents' answering brief is due on or before June 11, 1982. The petitioners' reply brief is due on or before June 24, 1982.
 
 
 22
 The case will be calendared for oral argument in Seattle during the week of July 5, 1982.
 
 
 23
 The motion to quash is DENIED.
 
 
 
 [1]
 We include as well respondent-intervenors in this instruction