PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,

v.

The LTV STEEL CORPORATION and LTV Steel Company, Inc., Defendants.

No. 87 Civ. 7261 (RWS).

United States District Court, S.D. New York.

Feb. 5, 1988.

Pension Benefit Guar. Corp., by Carol Connor Flowe, Deputy General Counsel, Washington, D.C., Cleary, Gottlieb, Steen & Hamilton, George Weisz, of counsel, New York City, for plaintiff.

Davis Polk & Wardwell, Lewis B. Kaden, Karen E. Wagner, Sharon Katz, of counsel, New York City, for defendants.

Stroock & Stroock & Lavan, Brian Cogan, of counsel, New York City, for Official Committee of Unsecured Creditors of LTV Corp.

## MEMORANDUM OPINION AND ORDER

SWEET, District Judge.

The Pension Benefit Guaranty Corporation ("PBGC") has moved for a protective order preventing the LTV Corporation and LTV Steel Company, Inc. (together "LTV") from taking any discovery in connection with this action in which the PBGC seeks to enforce its restoration of three of LTV's major pension plans (the "Plans"). Oral argument was held on February 1, 1988, and a decision was rendered permitting LTV to conduct limited discovery. This opinion briefly discusses the grounds for that decision and sets forth more precisely the parameters within which such discovery is to be conducted.

*Background*

This discovery application arises in connection with the PBGC's summary judgment motion, filed January 29, 1988, in which the PBGC contends that upon the full administrative record before the PBGC at the time it decided to restore the Plans to LTV (the "Restoration Decision"), the agency's action was neither arbitrary, capricious nor an abuse of discretion. In anticipation of the PBGC's motion, LTV noticed the depositions of top PBGC officials, Cabinet members and other high officials in the Departments of Labor, Treasury and Commerce and, in connection therewith, served document requests on the PBGC. Since the time of its initial requests, LTV has narrowed its demands to the depositions of top PBGC officials, former Secretary of Labor William E. Brock and a representative from Goldman Sachs & Co., the investment consultant to the PBGC in connection with the LTV proceedings.

The PBGC opposes LTV's discovery requests on two grounds. First, based on its contention that judicial review of the Restoration Decision is governed by the Administrative Procedure Act's "arbitrary and capricious" standard, 5 U.S.C. § 706(2)(A), the PBGC argues that this court's review is limited to an examination of the 1592 page administrative record compiled by the PBGC and submitted to the court. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (*per curiam*). Second, the PBGC contends that the Su-

preme Court's decision in *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004–05, 85 L.Ed. 1429 (1941), insulates top government officials from being required to testify as to their reasons for taking official actions.

LTV disputes the PBGC's characterization of both the applicable standards and the scope of review but asserts that even assuming that the applicable standard is "arbitrary and capricious," LTV should still have the opportunity to conduct limited discovery to ascertain whether the administrative record is complete and whether the PBGC acted in bad faith.

*Completeness of the Administrative Record*

In *Camp v. Pitts*, 411 U.S. at 142–43, 93 S.Ct. at 1244, the Supreme Court held that where "there was such failure to explain administrative action as to frustrate effective judicial review," a court reviewing an agency decision may "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." The Court relied on its holding in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971), that a district court's review of an administrative decisionmaker's decision:

> ... is to be based on the full administrative record that was before the [decision-maker] at the time he made his decision. But since the bare record may not disclose the factors that were considered or the [decisionmaker's] construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the [decision-maker] acted within the scope of his authority and if [his] action was justifiable under the applicable standard.

Seizing the opportunity provided by *Overton Park* and *Camp v. Pitts*, litigants challenging agency decisions have succeeded in obtaining limited discovery to ensure that the administrative record before the court is complete. *See Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir.1982); *Public Power Council v. Johnson*, 674

F.2d 791, 793–94 (9th Cir.1982); *Natural Resources Defense Council, Inc. v. Train*, 519 F.2d 287, 292 (D.C.Cir.1975) ("plaintiffs are entitled to an opportunity to determine, by limited discovery, whether any other documents which are properly part of the administrative record have been withheld"); *Tenneco Oil Co. v. Department of Energy*, 475 F.Supp. 299, 317 (D.Del.1979) ("complete administrative record consists of all the documents and materials that were directly or indirectly considered by the decision-makers at the time the decisions were rendered"); *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 33–34 (N.D.Tex. 1981) (same).

Courts have also permitted litigants to supplement the administrative record with additional material that explains the administrative officials' basis for their action. *See Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C.Cir.1981); *Asarco, Inc. v. Environmental Protection Agency*, 616 F.2d 1153, 1159–60 (9th Cir. 1980). Such discovery is not intended to permit the district court "to substitute its judgment for that of the agency." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824. Rather, as the Ninth Circuit explained in *Asarco, Inc. v. EPA*, 616 F.2d at 1158–59:

> A satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is not on the wisdom of the agency's decision, but on whether the process employed by the agency to reach its decision took into consideration all the relevant factors.... The court cannot adequately discharge its duty to engage in a "substantial inquiry" if it is required to take the agency's word that it considered all relevant matters.

A recent decision by the Court of Appeals for this circuit permitted discovery to ensure the completeness of the record before the district court. In *Dopico v. Goldschmidt*, 687 F.2d 644 (2d Cir.1982), the Court reversed the district court's granting of summary judgment for federal mass transit officials in an action by handicapped individuals seeking compliance with federal laws and regulations that express a nation-

al policy of making urban mass transportation available to the handicapped. Discussing the importance of "[d]etermining what constitutes an agency's informational base" under *Overton Park,* the Court concluded that such a determination "may itself present a disputed issue of fact when there has been no formal administrative proceeding." *Dopico,* 687 F.2d at 654. There, the plaintiffs claimed that the record presented to the district court was not the full record that had been before the agency. The Court of Appeals held that the district court "could not properly grant summary judgment when such a basic factual issue was in dispute, without at least permitting plaintiffs some limited discovery to explore whether some portions of the full record were not supplied to the Court." *Id.* Although in *Dopico* the plaintiffs could identify certain basic documents that were not in the administrative record submitted to the district court, such a conclusive showing that the record was incomplete was not essential to the Court's holding that the "defendants' assurances that they have submitted the full record will not substitute for the Court's independent consideration of that issue after some opportunity ~r discovery." *Id.*

Here, the PBGC did not conduct a formal administrative proceeding before issuing its restoration notice to LTV. LTV points out that a large portion of the administrative record submitted by the PBGC consists of transcripts of proceedings before the bankruptcy court and LTV's own filings with the Securities Exchange Commission. LTV contends that out of the more than 1500 pages that have been filed with the court, less than 50 appear to be documents generated by the PBGC in the course of its consideration of the Restoration Decision. LTV suggests that the PBGC must have considered more than the economic summaries in the record reveal before deciding to exercise for the first time since its inception its statutory authority to restore terminated pension plans and thereby return more than $2 billion of liabilities to a company in reorganization.

It is not necessary at this time to determine either the standards nor the scope of review for the PBGC's motion for summary judgment. *Cf. Public Power Council v. Johnson,* 674 F.2d at 793. There are compelling reasons to allow limited discovery to proceed at this stage and to reserve a determination of what should constitute the record before the court. First, the absence of both a formal agency proceeding and formal administrative findings suggests that some limited discovery will be useful to ensure that all matters considered by the PBGC are brought before the court. Second, regardless of what is ultimately determined to be the standard for judicial review of the PBGC's action, at minimum the adequacy of the PBGC's deliberations, in terms of process if not substance, will be at issue. A full and complete administrative record is essential to meaningful judicial review of that issue. Third, as set forth in prior opinions in this case, the PBGC's Restoration Decision raises novel and complex legal issues of first impression whose resolution will have a substantial impact on the relationship between Title IV of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1301–1461, and Chapter 11 of the Bankruptcy Code, as well as on the individual participants in the Plans. Therefore, under the unusual circumstances of this case and in view of the relatively small number of PBGC generated documents in the administrative record, LTV's allegations with respect to the completeness of the record, though by necessity unspecific, constitute sufficient groundsto warrant some limited discovery under the rule announced in *Dobico.*

### Depositions of Agency Officials

LTV seeks to obtain testimony from Dr. Kathleen P. Utgoff, the PBGC's Executive Director, who, it appears, has assumed primary responsibility for the Restoration Decision. The Supreme Court's decision in *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), cautions against permitting top agency officials to be "called to testify regarding their reasons for taking official actions." *Simplex*

*Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575, 586 (D.C.Cir.1985); *see Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825 ("inquiry into the mental processes of administrative decisionmakers is usually to be avoided"). Moreover, the Supreme Court's decision in *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825, requires that "where there are administrative findings that were made at the same time as the decision, ..., there must be a strong showing of bad faith or improper behavior before such inquiry may be made." *See San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission,* 751 F.2d 1287, 1327 (D.C.Cir.1984); *National Nutritional Foods Ass'n v. Food and Drug Admin.,* 491 F.2d 1141, 1144–46 (2d Cir.1974). Nevertheless, the Supreme Court expressly recognized in *Overton Park* that where there are no such formal findings, "the only way there can be effective judicial review is by examining the decisionmakers themselves." *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825–26.

■ The PBGC did not issue formal administrative findings at the time of the Restoration Decision, and LTV is not required to make a strong showing of bad faith in order to obtain testimony from the PBGC's Executive Director. That the Restoration Decision was not the product of the PBGC's acting in an adjudicative function further tempers the prohibition announced in *Morgan.* However, in consideration of the deference of courts to agencies that our administrative state requires, *see San Luis Obispo Mothers for Peace,* 751 F.2d at 1325, courts have refused to allow examination of top government officials regarding decisions committed to their discretion. *See Simplex Time Recorder,* 766 F.2d at 586–87 (citing cases). Therefore, a district court's decision to exercise its dis-

cretion to permit discovery of government officials must be circumspect and supported by a showing that such an examination is necessary and not unduly burdensome.

■ The underlying rationale for permitting some limited discovery in this action is. to ensure the completeness of the administrative record before the court. Testimonial discovery should similarly be tailored to achieve that limited goal. Therefore, LTV will be permitted to take discovery of the Executive Director of the PBGC who, it is assumed, has taken responsibility for the record submitted to the court and is the primary source of information as to what matters, whether discussed orally or committed to writing, were considered in the course of the PBGC's deliberations leading up to the Restoration Decision.[1] Because the primary goal of this limited discovery is to ascertain fully what the PBGC did consider, LTV will not be permitted to inquire at length into areas that it finds the PBGC did not consider.[2]

■ There is an additional aspect to the testimonial discovery requested by LTV that must be addressed. LTV alleges that the PBGC's pecuniary interest as a creditor of LTV led it to act in bad faith in restoring the Plans. LTV contends that by restoring the Plans in September, the PBGC hoped to benefit from amendments to ERISA (the "Amendments") that it was then supporting in Congress and which became effective on December 22, 1987. LTV alleges that the Amendments could greatly increase the amount of the PBGC's termination liability claims against LTV and that by restoring the Plans in September with the intent to reterminate them in the fu-

1. Since LTV has not made any showing that former Secretary of Labor Brock had information available to him that was not generated by the PBGC, LTV's request to take his deposition is denied. On the other hand, because of the obvious importance of economic analysis to the Restoration Decision and the role played by Goldman Sachs in formulating that analysis, LTV will be permitted to take the deposition of a representative from Goldman Sachs, again for the limited purpose of discovering whether all the final economic analyses produced by Gold-

man Sachs for the PBGC have been included in the administrative record.

2. For example, if the Executive Director answers in the negative to such a question as "Did the PBGC consider XYZ document or factors in reaching its decision?" LTV shall be precluded from further inquiry into that document or factor, its relevance or any importance it might have had were it considered in the context of the Restoration Decision.

**344**

ture, the PBGC was using its restoration authority under § 4047 of ERISA, 29 U.S.C. § 1347, merely as a device to improve its position as a creditor of LTV. In order to prove this claim, LTV seeks to discover the extent to which the Amendments entered into the Restoration Decision and whether any documents exist that describe the effect of the Amendments on the PBGC's decisionmaking process.

The Honorable Anthony M. Kennedy writing for the Ninth Circuit Court of Appeals in *Public Power Council v. Johnson,* 674 F.2d 791, encountered a similar claim of bad faith concerning the contract negotiating practices of the Bonneville Power Administration ("BPA"). In granting the petitioner's discovery requests for depositions of two officials of the BPA, Judge Kennedy wrote:

> ... courts will go beyond the agency record when agency bad faith is claimed. Petitioner's cause of action alleges bad faith in the negotiation process, and petitioners are unable to develop and present this novel and complex claim on the basis of the drafts of the contracts alone. Normally there must be a strong showing of bad faith or improper purpose before the court may inquire into the thought processes of administrative decisionmakers, *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 814. Though petitioners have not met that burden, for the reasons discussed above petitioners should proceed with discovery to develop these claims, as we do not foreclose here any legal grounds for challenging the agency action.

*Public Power Council v. Johnson,* 674 F.2d at 795. Judge Kennedy expressly reserved decision on either the applicable standard of review or whether the fruits of such discovery would ultimately be considered as part of the record for the reviewing panel.

Here, LTV's bad faith claim is based upon a narrow, albeit serious, charge that the PBGC exercised its statutory authority under ERISA for an improper purpose; namely, to increase its termination liability claim in the ongoing bankruptcy proceed-

ing by approximately $800 million. Therefore, LTV will be permitted to examine the Executive Director on the extent, if any, to which consideration of the Amendments entered into the PBGC's Restoration Decision and whether any documents exist that relate to that consideration. This discovery order is not to be construed as a fishing license for any bad faith claim that LTV may envision; rather, such discovery is to be confined strictly to the allegations raised by LTV in open court and in its motion papers.

For the reasons set forth above, LTV is granted discovery of any documents that were considered by the PBGC in making the Restoration Decision. LTV may take the deposition of the Executive Director of the PBGC for the limited purpose of discovering the existence of such documents and of exploring the impact of the Amendments on the Restoration Decision. LTV may also take the deposition of a representative of Goldman Sachs for the limited purpose of discovering the economic analyses that were prepared by that firm for the PBGC in connection with the Restoration Decision.

IT IS SO ORDERED.