**HARRISONVILLE TELEPHONE COMPANY, Marseilles Telephone Company, and Metamora Telephone Company, Plaintiffs,**

v.

**ILLINOIS COMMERCE COMMISSION, Charles E. Box, Chairman, Erin M. O'Connell Diaz, Commissioner, Lula M. Ford, Commissioner, Robert F. Lieberman, Commissioner, and Kevin K. Wright, Commissioner, in their official capacities as Commissioners of the Illinois Commerce Commission and not as individuals, and Sprint Communications, LP, agent of Sprint Communications Company, LP, Defendants.**

No. CIV. 06–73–GPM.

United States District Court,
S.D. Illinois.

Dec. 13, 2006.

Donald E. Weihl, Greensfelder, Hemker et al., Belleville, IL, Jason L. Ross, Kirsten M. Ahmad, Greensfelder, Hemker et al., St. Louis, MO, Troy A. Fodor, Law Offices of Troy A. Fodor, Springfield, IL, for Plaintiffs.

Thomas R. Stanton, John P. Kelliher, Illinois Commerce Commission, Chicago, IL, Kirsten J. Daru, Michele Floyd, Raymond A. Cardozo, Reed Smith, San Francisco, CA, Haran C. Rashes, Roderick S. Coy, Clark Hill PLC, Lansing, MI, for Defendants.

## MEMORANDUM AND ORDER

MURPHY, Chief Judge.

This matter is before the Court on the Emergency Motion (1) for a Protective Order, or in the Alternative (2) for Reconsideration of Prior Discovery Order, or in the Further Alternative (3) for Certification for Interlocutory Appeal under 28 U.S.C. § 1292(b) Ruling or a Telephonic Hearing Requested by November 14, 2006, brought by Defendant Sprint Communications, LP ("Sprint") (Doc. 71). For the following reasons the motion is **GRANTED in part** and **DENIED in part.**

This is an action pursuant to section 252(e)(6) of the Telecommunications Act of 1996, 47 U.S.C. § 251 *et seq.,* ("Telecommunications Act") in which Plaintiffs Harrisonville Telephone Company, Marseilles Telephone Company, and Metamora Telephone Company, who are Illinois-based rural local exchange carriers ("RLECs"), seek judicial review of decisions by Defendant Illinois Commerce Commission ("ICC") pertaining to interconnection

agreements between the RLECs and Sprint for the provision of local telephone service. *See* 47 U.S.C. § 251(a)(1), (c)(1). By Order entered October 24, 2006, the Court directed Sprint to provide to the RLECs an unredacted copy of a contract between Sprint and Mediacom, a cable company that wishes to provide local telephone services in the RLECs' service areas, and to produce a witness knowledgeable about the agreement within thirty days of the date of entry of the Order. Sprint now has moved for reconsideration of that ruling, contending that pricing information contained in the agreement is confidential business information that should be redacted from the agreement. In the event reconsideration is denied, Sprint requests that the Court certify the ruling for interlocutory appeal.

 District courts have inherent power to reconsider interlocutory orders. *See Koelling v. Livesay*, No. 04–CV–00375–MJR, 2006 WL 3360502, at *1 (S.D.Ill. July 27, 2006) (citing *A. Hollow Metal Warehouse, Inc. v. U.S. Fidelity & Guar. Co.*, 700 F.Supp. 410, 411–12 (N.D.Ill.1988)). Reconsideration of an interlocutory order is committed to a court's sound discretion. *See Fisher v. National R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D.Ind.1993) (noting the "practically unbridled discretion of a district court to reconsider a previous interlocutory order."). The considerations that govern the reconsideration of interlocutory orders are essentially equitable. *See Atchley v. Heritage Cable Vision Assocs.*, 926 F.Supp. 1381, 1383 (N.D.Ind.1996) ("Interlocutory judgments are ... subject to the complete power of the court rendering them to afford such relief as justice requires."); *Akzo Coatings, Inc. v. Aigner Corp.*, 909 F.Supp. 1154, 1160 (N.D.Ind.1995) ("[A] motion to reconsider an interlocutory order may be entertained and granted as justice requires."); *Acme Printing Ink Co. v. Menard, Inc.*, 891 F.Supp. 1289, 1295

(E.D.Wis.1995) ("In contrast to a motion to reconsider a final judgment, which must meet the requirements of Federal Rules of Civil Procedure 59 or 60, a motion to reconsider an interlocutory order may be entertained and granted as justice requires."). In general, a district court's rulings "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure," and "ill-founded requests for reconsideration of matters previously decided ... needlessly take the court's attention from current matters and visit inequity upon opponents who, prevailing in an earlier proceeding, must nevertheless defend their position again and again." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F.Supp.2d 804, 820 (S.D.Ill.2002).

 To the extent Sprint suggests that discovery is improper in this instance because this is a case involving judicial review of agency action based on an administrative record, the Court has addressed this issue already in its Order entered October 24, 2006. Although judicial review of agency decisions is generally limited to review of the administrative record, this rule is subject to certain exceptions. Specifically, judicial review of an agency decision may expand beyond the record in the following circumstances: (1) if necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied on documents not in the record; (3) when supplementing the record is necessary to explain technical terms or complex subject matter; or (4) when the plaintiff makes a showing of agency bad faith. *See Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir.1996). *Cf. Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (when the Comptroller of Currency failed to explain an administrative action

denying a national bank charter and thereby frustrated effective judicial review, the remedy was to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as might prove necessary); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419–20, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (a court reviewing an action of the Secretary of Transportation authorizing use of federal funds for the construction of an expressway through a public park could require the administrative officials who participated in the decision to give testimony explaining their action upon a showing of administrative bad faith).

■ Correspondingly, limited discovery may be permitted in administrative review proceedings to ensure that an agency considered all relevant factors in reaching a decision. As the court noted in *Public Power Council v. Johnson,* 674 F.2d 791 (9th Cir.1982), discovery "facilitate[s] expeditious review" of agency actions and ensures "full presentation of the issues" to a court reviewing such action. *Id.* at 795. *See also Conservation Law Found. of New England, Inc. v. Clark,* 590 F.Supp. 1467, 1474 (D.Mass.1984) (discovery will be permitted to determine if the administrative record submitted by the agency is "self-serving, incomplete or unclear."); *Exxon Corp. v. Department of Energy,* 91 F.R.D. 26, 33 (N.D.Tex.1981) ("[L]imited discovery to complete the record is . . . proper where the Court determines the agency has failed to file the . . . whole record."); *Tenneco Oil Co. v. Department of Energy,* 475 F.Supp. 299, 317 (D.Del.1979) ("Tenneco correctly asserts that it is entitled to discover any materials necessary to complete the administrative record."); *Smith v. FTC,* 403 F.Supp. 1000, 1008–09 (D.Del. 1975) (quoting *Citizens to Preserve Overton Park, Inc.,* 401 U.S. at 416, 91 S.Ct. 814) (discovery permits courts to make the requisite "searching and careful" inquiry to determine whether an agency considered all relevant factors in making a decision).

· The threshold for permitting limited discovery in administrative review proceedings is not high. In *Public Power Council,* the court suggested that such discovery should be permitted upon a showing that a party's need for discovery was not "insubstantial or frivolous." 674 F.2d at 795. *See also Dopico v. Goldschmidt,* 687 F.2d 644, 654 (2d Cir.1982) (permitting limited discovery in an administrative review proceeding upon "a strong suggestion that the record before the Court was not complete."). In this instance, the record before the Court indicates that no discovery was conducted in the administrative proceedings before the ICC and that at least one of the administrative orders challenged by the RLECs was issued without the benefit of either discovery or an evidentiary hearing. *See Pension Benefit Guar. Corp. v. LTV Steel Corp.,* 119 F.R.D. 339, 342 (S.D.N.Y.1988) ("There are compelling reasons to allow limited discovery to proceed at this stage and to reserve a determination of what should constitute the record before the court . . . . [T]he absence of both a formal agency proceeding and formal administrative findings suggests that some limited discovery will be useful to ensure that all matters considered by the [agency] are brought before the court.").

■ Moreover, the essential theory of the RLECs' case appears to be that Sprint is not a "common carrier" and thus not a "telecommunications carrier" within the meaning of the Telecommunications Act because Sprint offers its services only to private business partners like Mediacom pursuant to individually-negotiated contracts. *See* 47 U.S.C. § 251 (setting out the duty of "telecommunications carriers" to negotiate interconnection agree-

ments); 47 U.S.C. § 153(44) (defining "telecommunications carrier"); *U.S. Telecom Ass'n v. FCC,* 295 F.3d 1326, 1330–32 (D.C.Cir.2002) (citing, inter alia, *Virgin Islands Tel. Corp. v. FCC,* 198 F.3d 921, 922, 925–26 (D.C.Cir.1999)) (a "telecommunications carrier" must be a "common carrier" that holds itself out to serve all potential users indifferently and that allows customers to transmit information of the customer's own choosing); *Southwestern Bell Tel. Co. v. FCC,* 19 F.3d 1475, 1481 (D.C.Cir.1994) (quoting *National Ass'n of Regulatory Util. Comm'rs v. FCC,* 533 F.2d 601, 609 (D.C.Cir.1976)) ("If the carrier chooses its clients on an individual basis and determines in each particular case 'whether and on what terms to serve' and there is no specific regulatory compulsion to serve all indifferently, the entity is a private carrier for that particular service and the [Federal Communications] Commission is not at liberty to subject the entity to regulation as a common carrier."). In light of the RLECs' theory of the case, the terms of Sprint's agreement with Mediacom, including provisions for exclusivity, "most favored nation" status, and pricing, have obvious relevance. *See, e.g., In re Arbitration of: Sprint Communications Co., L.P. v. Ace Communications Group,* Docket No. ARB–05–2, 2005 WL 3624405, at \*\*6–7 (Iowa Utils.Bd. Nov. 28, 2005) (considering pricing information in determining whether Sprint is a telecommunications carrier within the meaning of the Telecommunications Act).

In sum, the Court remains convinced that limited discovery with respect to the agreement between Sprint and Mediacom is appropriate. Such discovery will ensure both that the RLECs have a full opportunity to prepare their case and that the Court has the information before it necessary to decide whether the ICC considered all of the relevant factors in reaching the decisions challenged in this case. *See Deukmejian v. NRC,* 751 F.2d 1287, 1327 (D.C.Cir.1984) (supplementation of the administrative record is appropriate upon "a prima facie showing that the agency excluded from the record evidence adverse to its position[.]"); *Pension Benefit Guar. Corp.,* 119 F.R.D. at 342 (permitting limited discovery because "regardless of what is ultimately determined to be the standard for judicial review of the [agency's] action, at minimum the adequacy of the [agency's] deliberations, in terms of process if not substance, will be at issue. A full and complete administrative record is essential to meaningful judicial review of that issue."); *Public Citizen v. Heckler,* 653 F.Supp. 1229, 1237–38 (D.D.C.1986) (the court was free to include in the record for review of an administrative decision documents necessary to ascertain whether the agency considered all relevant factors it appropriately should have considered in reaching the decision).

■■ The Court turns next to the matter of Sprint's request for a protective order. Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part:

> Protective Orders. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition, after being sealed, be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

FED. R. CIV. P. 26(c). The purpose of the provisions of Rule 26 governing protective orders is to facilitate discovery by shielding from disclosure trade secrets and other confidential business information, thereby encouraging parties apprehensive about the disclosure of such information to cooperate in discovery. *See In re Krynicki,* 983 F.2d 74, 75 (7th Cir.1992) ("Confidentiality while information is being gathered not only protects trade secrets but also promotes disclosure: parties having arguable grounds to resist discovery are more likely to turn over their information if they know that the audience is limited[.]"). There is no per se privilege exempting confidential business information from discovery, but "courts must exercise discretion to avoid unnecessary disclosure of such information." *AutoMed Techs., Inc. v. Eller,* 160 F.Supp.2d 915, 925 (N.D.Ill. 2001) (quoting *Triangle Ink & Color Co. v. Sherwin–Williams Co.,* 61 F.R.D. 634, 636 (N.D.Ill.1974)). Thus, to facilitate discovery, "[c]onfidential information is customarily made available ... under a protective order, and the district court has substan-

tial discretion to decide which information should be protected and to frame the order." *Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins., Inc.,* 784 F.2d 1325, 1346 (7th Cir.1986).

A court's discretion in entering a Rule 26 protective order is limited by certain qualifications. To obtain a protective order, the movant must show that the interest for which protection is sought is an actual trade secret or other confidential business information, and that there is good cause for the protective order. *See Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 944 (7th Cir.1999) (holding that, before sealing any part of the record of a case, a court must "make a determination, as the law requires, ... of good cause[.]"); *Makar–Wellbon v. Sony Elecs., Inc.,* 187 F.R.D. 576, 577 (E.D.Wis.1999) (quoting *Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir.1994)) (holding that "[e]ven if the parties agree that a protective order should be entered, they still have ... the burden of showing that good cause exists for issuance of that order."); *Wiggins v. Burge,* 173 F.R.D. 226, 228 (N.D.Ill.1997) (requiring an affirmative showing of good cause by the movant for a Rule 26 protective order, whether agreed to by adverse parties or not); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 300 (N.D.Ill.1993) ("In order to establish that information should be subject to a protective order, the party seeking protection bears the burden of establishing: (1) that the information is in fact a trade secret or confidential commercial information and (2) that there is good cause to protect the information."). To establish the requisite good cause for entry of a protective order, the moving party must show that "disclosure 'will work a clearly defined and very serious injury'" to its business. *Culinary Foods,* 151 F.R.D. at 300 n. 1 (quoting *United States v. IBM*

*Corp.,* 67 F.R.D. 40, 46 (S.D.N.Y.1975)). *Cf. Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir.1994) ("Good cause [for a protective order] is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure. The injury must be shown with specificity.").

Conversely, "broad allegations of harm unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test." *Culinary Foods,* 151 F.R.D. at 300 n. 1 (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)). "[Rule 26] requires that good cause be shown for a protective order . . . . The courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, in order to establish good cause." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2035 (3d ed. 1998 & Supp.2006) (collecting cases). *See also United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (the Rule 26 requirement of good cause for a protective order "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" that disclosure will cause injury to the movant). *Cf. John Does I–VI v. Yogi,* 110 F.R.D. 629, 631 (D.D.C.1986) (holding that a yogi demonstrated good cause for a protective order with respect to information about certain proprietary meditation techniques where the yogi established that, absent a protective order, the information would be disclosed to a competing swami).

 In this instance, Sprint's entire showing of good cause for a protective order consists of an affidavit by one of its attorneys, Raymond Cardozo, which asserts in a conclusory manner that disclosure of the agreement between Sprint and Mediacom will cause injury to Sprint. In the Court's view, this is insufficient to establish good cause. *See Culligan v. Yamaha Motor Corp., USA,* 110 F.R.D. 122, 125 (S.D.N.Y.1986) (finding that no good cause for a protective order existed where "Yamaha has presented no more than assertions by counsel, unsupported by evidence, that disclosure of the requested information would cause competitive injury."); *Rosenblatt v. Northwest Airlines, Inc.,* 54 F.R.D. 21, 23 (S.D.N.Y.1971) ("It is well-established that an attorney's affidavit which merely alleges that discovery will reveal even true secret formulae or trade secrets is insufficient to warrant a protective order."). Contrary to Sprint's contention, the RLECs are not Sprint's competitors and instead Sprint furnishes services to Mediacom that enable Mediacom to compete in the RLECs' service areas. *See Berkshire Tel. Corp. v. Sprint Communications Co., L.P.,* No. 05–CV–6502 CJS, 2006 WL 3095665, at **1–2 (W.D.N.Y. Oct.30, 2006) (outlining Sprint's business model for furnishing services to cable companies that want to provide local telephone service through interconnection agreements with local exchange carriers); *In re Sprint Communications Co. L.P.,* Nos. 050259, 050260, 050261, 050262, 050263, 050264, 050265, 050270, 050275, 050277, 050298 (Cons.), 2005 WL 1863370 (Ill. Comm. Comm'n July 15, 2005) (same). Under these circumstances, Sprint's allegations of injury as a result of disclosure to the RLECs of Sprint's agreement with Mediacom are entirely speculative.

Moreover, the Court is required to balance the RLECs' need for the information necessary to prepare their case together with Sprint's interest in privacy, *see Culinary Foods,* 151 F.R.D. at 300–01 (citing *Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539, 545 (N.D.Ind.1991)) (explaining that, even where good cause for a protective order is shown, a court must determine whether the need for discovery outweighs the need for privacy), and, as

discussed, the terms of Sprint's agreement with Mediacom bear directly on whether, under the RLECs' theory of the case, Sprint is or is not a "telecommunications carrier" within the meaning of the Telecommunications Act. The United States Court of Appeals for the Seventh Circuit has cautioned that "very few categories of documents are kept confidential once their bearing on the merits of a suit has been revealed." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir.2002). "Many a litigant would prefer that the subject of the case—how much it agreed to pay for the construction of a pipeline, how many tons of coal its plant uses per day, and so on—be kept from the curious ... including its business rivals and customers[.]" *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir.2000). However, "[p]eople who want secrecy [as to the subject matter of litigation] should opt for arbitration." *Id.* at 568 (recognizing that an executive's salary would not be entitled to confidential treatment "if a dispute erupted about payment ... or termination" of the executive).

▇ Finally, the Court believes that it is feasible in this case to craft a discovery order that protects both the RLECs' need for adequate discovery to prepare their case and any interest Sprint may have in confidentiality. The RLECs have requested that the Court order Sprint to produce a copy of the complete, unredacted agreement between Sprint and Mediacom for review by the RLECs' attorneys and outside consulting and testifying experts and their support staff working on this case. The RLECs further request that the Court order Sprint to produce a copy of the agreement redacting pricing figures, that is, dollar amounts only, with the redactions shown by black strike-outs, for review by at least one employee of each RLEC. The RLECs explain—reasonably, in the Court's view—that they have employees with technical knowledge regard-

ing the subject matter of this litigation that neither the RLECs' attorneys nor, possibly, outside experts possess. The Court believes that the RLECs' requests are appropriate and they will be granted, subject to the proviso that the agreement and any information pertaining thereto gathered in the course of this litigation will not be disseminated to anyone outside the small circle of persons authorized by this Order to review the agreement and will not be used by the RLECs for any business purpose apart from those directly implicated by this litigation, *e.g.*, whether and on what terms the RLECs are required to interconnect with Sprint and Mediacom. The Court notes that an agreement between Sprint and Mediacom or one of Mediacom's affiliated companies similar to the agreement at issue in this case was disclosed under circumstances similar to those proposed by the RLECs in a recent administrative proceeding, apparently without objection by or injury to Sprint. *See In re Sprint Communications Co. L.P.*, Cause No. 43052–INT–01 (Consolidated with 43053–INT 01 & 43055–INT 01), 2006 WL 2663730, at *1 (Ind. Util. Reg. Comm'n Sept. 6, 2006) (requiring Sprint to produce an unredacted portion of its agreement with Mediacom to attorneys for a local carrier and an employee of the carrier).

▇ As a last matter, the Court considers Sprint's request for certification of an interlocutory appeal. In general, of course, discovery orders are not final and appealable pursuant to 28 U.S.C. § 1291. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) ("As a general rule, a district court's order enforcing a discovery request is not a 'final order' subject to appellate review. A party that seeks to present an objection to a discovery order immediately to a court of ap-

peals must refuse compliance, be held in contempt, and then appeal the contempt order."); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 32 F.3d 1175, 1177 (7th Cir.1994) (a district court's order prohibiting a plaintiff from meeting privately with a witness was a discovery order and not immediately appealable; review could be obtained by disobeying the order and appealing the judgment of contempt that would result). Pursuant to 28 U.S.C. § 1292, a district court may certify for appeal a non-final order where: (1) the order presents a "controlling question of law"; (2) there is "substantial ground for difference of opinion" as to the application of the question of law; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). *See also Ahrenholz v. Board of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir.2000) ("There are four statutory criteria for the grant of a section 1292(b) petition to guide the district court: there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation.") (emphasis omitted); *Horwitz v. Alloy Auto. Co.*, 957 F.2d 1431, 1435 (7th Cir.1992) (quoting 28 U.S.C. § 1292(b)) ("Three primary factors are necessary for jurisdiction under 1292(b): (1) the issue certified for appeal must involve a 'controlling question of law'; (2) there must be 'substantial ground for a difference of opinion' as to the application of this question of law; and (3) the claim must be one in which the immediate appeal of this controlling question of law 'may materially advance the ultimate termination of the litigation[.]' "). Although interlocutory appeals are disfavored, this Circuit is not hostile to them in appropriate circumstances. *See Horwitz*, 957 F.2d at 1435 & n. 9 ("[W]e do not want it to be understood that we are hostile to appropriate interlocutory appeals under the applicable rules.") (collecting cases).

 The Court concludes that its rulings concerning discovery as to the agreement between Sprint and Mediacom are not suitable for certification under 28 U.S.C. § 1292(b). The discovery issues that have arisen regarding the agreement do not present a controlling issue of law, and appeal of them will not materially advance the ultimate termination of the litigation. A controlling question of law is a threshold issue that seriously affects the way in which a court conducts a litigation, for example, impacting whether or not the plaintiff has a claim for relief under a particular statute. *See Ahrenholz*, 219 F.3d at 676 (explaining that a " 'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine[.]"); *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir.1991) ("[A] question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants."). In this instance the issue of whether the RLECs should have access to an unredacted or partially-redacted copy of the agreement between Sprint and Mediacom in building their case obviously is not a controlling question of law, and an appeal of this issue will not in any measurable way affect the law that is applied to the substantive issues of the case or materially advance the ultimate termination of the litigation.

"Ordinarily it is difficult to believe that a discovery order will present a controlling question of law or that an immediate appeal will materially advance the termination of the litigation. Thus, in most instances review under [28 U.S.C. § 1292(b)] should not be allowed." 8 Wright, Miller & Marcus, *Federal Practice & Procedure* § 2006 (collecting cases). *See also Cipollone*, 785 F.2d at 1118 n. 14

(an order amending a protective order "is certainly not of the pivotal nature required for certification" of an appeal from the order under section 1292(b)); *EEOC v. Neches Butane Prods. Co.*, 704 F.2d 144, 151 (5th Cir.1983) (noting "the probable unreviewability of virtually any discovery order" on interlocutory appeal); *Evanson v. Union Oil Co. of Cal.*, 619 F.2d 72, 74 (Em.App.1980) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (in general, allowing interlocutory appeals of discovery orders that can be reviewed on direct appeal from a final judgment would "authorize ... indiscriminate interlocutory review of decisions made by the trial judge"); *Xerox Corp. v. SCM Corp.*, 534 F.2d 1031, 1032 (2d Cir.1976) (holding that a district court properly refused to certify for interlocutory appeal pretrial discovery orders issued with respect to documents claimed to be protected by attorney-client privilege); *United States v. Salter*, 421 F.2d 1393, 1394 (1st Cir.1970) (the admissibility of certain evidence on a legally relevant issue is not a controlling question of law warranting allowance of an interlocutory appeal from a discovery order); *United States v. Woodbury*, 263 F.2d 784, 787–88 (9th Cir.1959) (an appeal from an interlocutory order presenting the question of whether the government could claim privilege as a valid reason for its refusal to disclose certain documents did not involve controlling issues of law); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 933 (N.D.Cal.1976) (holding that an order requiring a party to produce documents over a claim of privilege did not involve a controlling question of law and that an immediate appeal from the order would not materially advance the ultimate termination of the litigation); *McSparran v. Bethlehem–Cuba Iron Mines Co.*, 26 F.R.D. 619, 622 (E.D.Pa.1960) (denying certification of an interlocutory appeal from an order denying a plaintiff's motion to require a defendant to produce statements taken from certain witnesses); *Ostow & Jacobs, Inc. v. Morgan–Jones, Inc.*, 181 F.Supp. 208, 218 (S.D.N.Y.1960) (holding that orders vacating a subpoena and notices for taking depositions presented no controlling questions of law). The Court's discovery rulings regarding the agreement between Sprint and Mediacom clearly are not suitable for certification under section 1292(b), and therefore Sprint's request for certification of an interlocutory appeal will be denied.

To conclude, Sprint's Emergency Motion (1) for a Protective Order, or in the Alternative (2) for Reconsideration of Prior Discovery Order, or in the Further Alternative (3) for Certification for Interlocutory Appeal under 28 U.S.C. § 1292(b) Ruling or a Telephonic Hearing Requested by November 14, 2006 (Doc. 71) is **GRANTED in part** and **DENIED in part**. Sprint's request for reconsideration of the Court's Order entered October 24, 2006, ordering Sprint to produce to the RLECs an unredacted copy of the agreement between Sprint and Mediacom is **DENIED**. Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, no later than five (5) days from the date of entry of this Order Sprint **SHALL** produce the agreement, subject to the following conditions: Sprint will produce a copy of the complete, unredacted agreement between Sprint and Mediacom for review by the RLECs' attorneys and outside consulting and testifying experts and their support staff working on this case; Sprint will produce a copy of the agreement redacting pricing figures, that is, dollar amounts only, with the redactions shown by black strike-outs, for review by one (1) employee of each RLEC; and the agreement will not be disclosed beyond the terms of this Order and will not be disseminated to any persons other than those authorized to review the agreement by this Order and except as provided in this Or-

der. Sprint's request for certification of this Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is **DENIED.**

**IT IS SO ORDERED.**