NAVAJO TRIBE OF
INDIANS, Plaintiff,

v.

UNITED STATES DEPARTMENT OF the
INTERIOR, Donald P. Hodel, Secretary
of the Interior, Ross O. Swimmer, Assistant Secretary for Indian Affairs,
and Wilson Barber, Jr., Area Director,
Navajo Area Office, Defendants.

Civ. No. 86–0220–JB.

United States District Court,
D. New Mexico.

March 26, 1987.

Paul E. Frye, Albuquerque, N.M., and
Donna C. Chavez, Navajo Nation Dept. of
Justice, Window Rock, Ariz., for plaintiff.

Ronald F. Ross, Asst. U.S. Atty., Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS MATTER comes before the Court on a motion to dismiss by Defendants, cross-motions for summary judgment, Defendants' motion to limit the Court's review to the administrative record, as well as Plaintiff's motion for a preliminary injunction. The Court, having reviewed the pleadings, the evidence of record and the relevant law, treating the Complaint as one requesting judicial review of an agency decision, finds that the record below is inadequate to support the actions of the Defendants and remands the cause to the Secretary for further proceedings consistent with this opinion.

Plaintiff Tribe asks this Court to issue an order compelling the Government Defendants to enter into a contract with the Tribe for the purpose of maintaining tribal census records. The United States, through the Secretary of the Interior, has the authority under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450 *et seq.*, to enter into contracts with the Tribe, at the Tribe's option, to provide for tribal administration of certain services previously administered by the federal government through the Bureau of Indian Affairs ["BIA"]. This arrangement is in-

tended thereby to afford the Tribe greater freedom in controlling its own affairs.[1] For fiscal years 1982–85, such a contract was in effect and was funded for between $350,000 and $500,000 yearly. The relevant statute, 25 U.S.C. § 450j, authorizes the term of such contracts not to exceed three years. The Tribe sought to renew its contract for another three-year term for the fiscal years 1986–88. Initial contract applications may be declined for specific reasons enumerated in 25 C.F.R. § 271.15, but the presumption is strongly in favor of granting such contracts unless the United States can show that one of the specific grounds for declination is satisfied. When it comes to recontracting, there is even less discretion. 25 C.F.R. § 271.20 states the Bureau *will* recontract for the same functions or programs as the original contract at the request of the Tribe. The only real limitation on a recontract application would appear to be a lack of funding, as it is clear that the monies obligated on contracts cannot exceed available appropriations. *See* 31 U.S.C. § 665(a); 25 C.F.R. § 271.-23(d)(2)(i).

The Department of the Interior, as represented by Defendant Wilson Barber, Area Director of the Navajo Area Office, notified the Tribe on June 25, 1985, that its recontract application would be denied because of lack of funds at the local level. Barber acknowledged that no other declination issues were involved in the decision not to recontract.

When lack of funds is the only reason to decline to recontract, the regulations mandate a rather extensive procedure of give-and-take between the Tribe and the BIA in an attempt to resolve the funding problem.

If funds are not available to adequately finance the proposed contract without significantly reducing services under the noncontracted programs or parts of programs, the Area Director shall so notify the tribal organization and the tribal governing body(s) in writing and other alternative solutions to the funding problem. The alternatives offered by the Area Director may include those given in subdivisions (i) through (vii) of § 271.22(c)(1) which can be used alone or ·in combination to solve the funding problem.[2] The tribal organization and tribal governing body(s) may also propose alternative solutions to solve the funding problem. Upon receiving written notice of the applicant's choice of alternative(s), the Area Director shall determine whether the alternative(s) chosen will solve the funding problem. If the applicant's choice of alternative(s) is sufficient to solve the funding problem, or if the solution involves reprogramming which requires congressional action, the Area Director shall take the action in paragraph (d)(3), (d)(4), or (d)(5) of this section, as appropriate.[3] If the applicant's choice of alternative(s) will not solve the funding problem, the applicant shall be notified in writing and will be asked to reconsider the matter and make a second choice. After the applicant has reconsidered and notified the Area Director in writing of its second choice of alternative(s), the Area Director shall decide whether that choice is sufficient to solve the funding

1. The Congress, after careful review of the Federal government's historical and special legal relationship with, and resulting responsibilities to, American Indian people, finds that—
    (1) the prolonged Federal domination of Indian service programs has served to retard rather than enhance the progress of Indian people and their communities by depriving Indians of the full opportunity to develop leadership skills crucial to the realization of self-government, and has denied to the Indian people an effective voice in the planning and implementation of programs for the benefit of Indians which are responsive to the true needs of Indian communities; and

   (2) the Indian people will never surrender their desire to control their relationships both among themselves and with non-Indian governments, organizations, and persons. 25 U.S.C. § 450(a).

2. These options include, *inter alia,* reallocation of funds from other Bureau programs, consolidation of programs, redesign of the contract proposal by the Tribe, procurement of funds from outside the Bureau, or reduction of service levels under the proposed contract.

3. Depending on the Tribe's proposal and the Bureau's recommendations, different pathways for seeking funding are prescribed.

problem. If the Area Director determines that the applicant's second choice of alternative(s) will not solve the funding problem, or if the applicant refuses to make a selection, the proposed contract cannot be entered into due to the limitation that monies obligated on contracts cannot exceed available appropriations (31 U.S.C. § 665(a)).

25 C.F.R. § 271.23(d)(2)(i).

It is clear that at all times during the decision-making process the BIA representatives are required to offer technical assistance to the Tribe to assist it in securing information relevant to its request to contract or to overcome declination objections. *See* 25 C.F.R. §§ 271.16, 271.25(d), 271.27.

When insufficient funds is the stated ground for declination and reprogramming of Bureau funds is sought, the Tribe may appeal to the Commissioner of Indian Affairs for review. The Commissioner is then directed to hold an informal conference in an attempt to resolve the issues. 25 C.F.R. § 271.23(d)(2)(ii). The Tribe may request the Commissioner to consider reprogramming of funds. 25 C.F.R. § 271.23(3). The Commissioner may decide to forward a reprogramming request through the Department to the Office of Management and Budget for referral to the appropriate congressional committees. 25 C.F.R. § 271.25(c)(1).

If the tribal applicant is not satisfied with the informal conference or if it chooses to bypass it entirely, it is entitled to a formal hearing before an official from the Office of Hearings and Appeals of the Department of the Interior. The hearing shall afford the following rights:

1. The right to written notice of issues to be considered;

2. The right to be represented by counsel;

3. The right to have the Department provide witnesses who are capable of providing testimony on the issues;

4. The right to cross examine witnesses;

5. The right to produce oral and documentary evidence;

6. The right to require testimony under oath;

7. The right to a copy of the transcript of the hearings and all documentary evidence introduced.

25 C.F.R. § 271.81(c). This decision may then be appealed to the Assistant Secretary of Indian Affairs whose determination constitutes the final decision of the Department. 25 C.F.R. § 271.82.

In the case now before the Court, the Tribe seeks judicial review, under 5 U.S.C. § 701 *et seq.*, the Administrative Procedures Act, of the Department's decision not to recontract for the purpose of maintaining tribal census records. The Tribe claims that the census figures are essential to determine the distribution of several federal benefits to members of the Tribe. The Tribe further claims that the government has a statutory duty to enter into such a contract based on the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450 *et seq.*, as well as a trust duty founded on federal common and statutory law as well as certain treaties. The Court finds that the only possible source of the duty to recontract, as opposed to a more general duty to maintain census records, is 25 U.S.C. § 450 *et seq.*, the Indian Self-Determination and Education Assistance Act, and it is this duty that lies at the heart of Plaintiff's Complaint. The Court need not determine whether a separate duty exists on the part of the Department to maintain tribal census records based on federal law because the relief sought and the proof adduced do not relate to this issue. Furthermore, Plaintiff does not bring forth any specific provisions of law that support this position nor does Plaintiff adequately plead a basis for finding a waiver of the government's statutory immunity. Rather, the Tribe apparently seeks to compel the Department to recontract with the Tribe as directed by 25 U.S.C. § 450j and the accompanying regulations.

Thus, construing this action as one seeking judicial review of agency action under the Administrative Procedures Act, the Court is first faced with the question of what to review. Defendants submit that the administrative record in this case consists of documents 5 through 22 of the

exhibits attached to the Affidavit of Hazel Elbert, Deputy to the Assistant Secretary/Indian Affairs. Her conclusion that these documents constitute the administrative record was "[b]ased on discussions with my staff." Affidavit of Hazel Elbert, ¶ 3. The "record" consists of a series of letters with attachments. Significant portions of the record are itemized below:

Exhibit 5—Letter of Peterson Zah, Chairman of the Navajo Tribal Council, of May 29, 1985, to Wilson Barber, official notice of intent to recontract.

Exhibit 7—Memorandum of June 21, 1985, detailing recommendation of Contract Application Review Board:

"Navajo Area funds are not available to finance the proposed budget totaling $429,123 for Fiscal Year 1986. The Board recommends that you so notify the Tribe, in writing, and that in accordance with P.L. 93–638 regulations 25 CFR 271.23(d)(2), Review and Action by Area Director if funds are not available, you offer an alternative solution to the funding problem. The Board recommends that the alternative solution be a request for the Tribe to redesign the contract proposal or consolidate all or parts of the proposal with other Tribal programs. *These recommendations are preliminary to what will ultimately be your decision that the proposed recontract cannot be entered into because of unresolved funding problems* due to the limitation that monies obligated on contracts cannot exceed available appropriations (31 U.S.C. 665(a)). Your decision may then be appealed by the Tribe to the Deputy Assistant Secretary for Indian Affairs." [Emphasis added.]

Exhibit 8—Letter from Barber to Peterson Zah of June 25 1985, stating that while no declination issues as outlined in 25 C.F.R. § 271.15 are evident, funds were not available to finance the proposed contract. Barber "recommended that the Tribe consider redesigning the contract proposal or consolidating all or parts of the proposed contract with other tribal programs as an alternative solution to resolving this funding problem."

Exhibit 9—Letter from Zah to Barber of July 10, 1985, rejecting the recommendation that the contract proposal be redesigned. "The Navajo Nation stands firm in its position that the Census Program funding is a trust obligation on the part of the United States Government and cannot be zeroed out of the Bureau's budget." The letter also states that the Navajo Nation is appealing the decision.

Exhibit 10—Letter from Barber to Zah acknowledging that the Bureau recommendation is rejected; also "[s]ince you have stated that the Navajo Nation is appealing the decision to totally eliminate Census funding, I will not offer you a second suggestion for an alternative solution as required by P.L. 93–638 regulations."

Exhibit 11—Barber's request to Deputy Assistant Secretary/Indian Affairs for Restoration of Funding and Notice of Appeal.

Exhibit 12—Letter from Zah to John W. Fritz, Deputy Assistant Secretary appealing Area Director's decision and requesting an informal conference

Exhibit 14—Letter of August 29, 1985, from Claudeen Bates Arthur, Attorney General of the Navajo Nation Department of Justice to John W. Fritz, requesting Interior's assistance in providing documents relevant to Tribe's appeal

Exhibit 15—Telegram dated September 26, 1985, from Hazel Elbert to Zah notifying him of extension of current contract for 90 days

Exhibit 17—Letter of October 28, 1985, from Zah to Elbert requesting follow-up of request for informal conference

Exhibit 18—Authorization of contract extension to February 15, 1986

Exhibit 20—Letter of January 21, 1986, from Zah to Elbert requesting follow-up of informal conference and requesting that staff member assist in negotiations for recontracting pending termination of funding extension on February 15, 1986

Exhibit 21—Memorandum of February 21, 1986, to Area Director from Acting Deputy Assistant Secretary authorizing

a further 90–day extension of the contract. "Should a revised contract result from your negotiations with the Navajo Nation, you are reminded that funding for the contract must come from the FY 1986 allotments already available to your Area."

Exhibit 22—Letter from Barber to Zah dated February 28, 1986, enclosing memorandum of February 21, 1986, and seeking further negotiations to involve possible reprogramming of Navajo Area negotiations

While not part of the official administrative record, other documentation submitted reveals that negotiations between the Tribe and the Area Office continued after February 1986. Area Director Barber recommended application of certain carry-over funds from other contracts to be used for financing the census program. Exh. 26, letter of May 19, 1986. This suggestion caused Zah to restate his position that use of carry-over monies was unacceptable and that the Navajo Nation would still seek funds resulting from reprogramming of BIA functions. Exh. 27, letter of May 29, 1986. On June 3, 1986, the Tribe was notified that as there was no continued authorization of the contract for the census program, it would be terminated. Where the whole recontracting problem now stands in March, 1987 is unclear.

As these exhibits demonstrate, there were no formal findings made regarding the facts underlying the alleged funding dilemma and Defendants' attempts to resolve them. The "administrative record" consists primarily of informal correspondence between the BIA and the Tribe. No informal conference or formal hearing was held. However, the Tribe itself was not without responsibility for breakdown of the negotiating process. The "record" suggests that the tribal representatives were reluctant to consider alternative funding options. However, it also appears that information needed by the Tribe to formulate alternative proposals was not readily forthcoming from the Defendants.

Defendants move to dismiss or seek summary judgment on several points. Salient among these are Defendants' contentions that (1) the case is moot, (2) Plaintiff has failed to exhaust its administrative remedies, and (3) a budgetary decision such as this one is nonjusticiable.

■ First, the Court does not believe that Plaintiff's Complaint is entirely moot. While fiscal year 1986 has come and gone and apparently the Tribe did manage to obtain some funds to continue operation of the census program, the Tribe sought to recontract for a period of three years beginning with fiscal year 1986. Furthermore, the funding problem is a situation "capable of repetition yet evading review" on a yearly basis. *See Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973).

■ The question of exhaustion of administrative remedies in this case is problematic. Plaintiff, to some degree, attempted to pursue its administrative appeal rights, but Defendants never followed through and conducted a full administrative review as required by the regulations. The parties did not enter into negotiations or work to develop alternatives as they should have done initially before a final decision not to recontract was made. Plaintiff did request an informal conference, but to the Court's understanding, was never granted one nor did the Department conduct any kind of a formal hearing. Consequently, this Court finds itself lacking an adequate record to review. If it is fair to conclude that the Department's final decision was not to recontract, then based on the administrative record, it was "without observance of procedure required by law" and was therefore "arbitrary, capricious and not in accordance with law." 5 U.S.C. § 706. Under this statute, such shortcomings allow this Court to hold unlawful and set aside the challenged agency action.

The Court concludes that the record as submitted is insufficient to support the Department's decision not to recontract in large part due to its failure to follow its own procedures. Although the Court is not empowered to substitute its own judgment for that of the agency, the Court

must have sufficient findings before it to allow it to determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment or abuse of discretion. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). While certain funding decisions inherent in resolution of this problem may not be capable of judicial resolution, the Court is nevertheless competent to determine that the Department of the Interior and its representatives failed to pursue all avenues open to them under the regulations and failed to afford Plaintiff all of the procedures it was due.

"[A] court may determine whether discretion has been abused without deciding—and even without being qualified to decide—the question that is for agency discretion." K. Davis, 5 *Administrative Law Treatise* 287. Particularly in the area of procedural justice, the Court is the only insurer that an agency exercises its discretionary functions within the boundaries of its own procedural guidelines. In this case, as a result of procedural irregularities, the Department has failed to develop a record justifying its decision not to recontract. Therefore, it is the conclusion of this Court that the proper response to the lack of an adequate record explaining the basis for the departmental decision not to recontract is to remand the case for development of a proper record relevant to the current time frame for which recontracting is now sought. *See Public Power Council v. Johnson,* 674 F.2d 791 (9th Cir.1982); *Asarco, Inc. v. United States Environmental Protection Agency,* 616 F.2d 1153 (9th Cir.1980).

The Court hereby directs that the Department and its representatives provide Plaintiff with all the technical assistance and procedural safeguards that it is due under the Department's own regulations. Plaintiff likewise has a duty to cooperate in resolving any differences that may arise between the parties. In economic decision-making such as is involved here, the Court's intervention must naturally be constrained. The statutory and regulatory scheme necessarily contemplates a great deal of give-and-take and cooperation between the parties, and it is the Court's view that these qualities have been lacking. The Court again emphasizes that the statutory and regulatory scheme weighs strongly in favor of recontracting. It is hoped that by following the proper procedures, the parties can successfully settle their differences as anticipated by the regulations themselves. If the stalemate continues, the Court will not hesitate to intervene to the extent of its authority.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that the Complaint and this action are remanded to the Secretary of the Department of the Interior for proceedings consistent with this opinion.