COUNTY OF SAN DIEGO, etc., Plaintiff,

v.

Bruce BABBITT, etc., et al., Defendants.

No. 93–0986–IEG (LSP).

United States District Court,
S.D. California.

March 3, 1994.

---

Scott H. Peters, Deputy County Counsel, for the County of San Diego.

Lauren N. Soll of the U.S. Dept. of Justice, and Kendall Newman, Asst. U.S. Atty., for Bruce Babbitt, Secretary of the U.S. Dept. of the Interior, Eddie Frank Brown, Asst. Secretary of the Interior, Woodrow Hopper, Acting Com'r of Indian Affairs, U.S. Bureau of Indian Affairs, Patrick Hayes, Director, Office of Trust Responsibilities, U.S. Bureau of Indian Affairs, Ronald M. Jaeger, U.S. Bureau of Indian Affairs (the "federal defendants").

David L. Mulliken, Joel H. Mack, and Cynthia H. Cwik of the law firm of Latham & Watkins, for the Campo Band of Mission Indians, a sovereign Indian tribal government, and Muht–Hei, Inc., a corp. owned and chartered by the Campo Band of Mission Indians (the "Campo Band defendants").

## AMENDED ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

GONZALEZ, District Judge.

The motions for summary judgment brought by defendants came on regularly for hearing on January 18, 1994, at 10:30 a.m. in Courtroom 11 of the above-entitled court, the Honorable Irma E. Gonzalez presiding.

In April, 1993, the Secretary of the Interior, Bruce Babbitt, approved the Campo Solid Waste Management Project ("Project"), a tribal economic development project to construct and operate a solid waste disposal facility on tribal trust lands on the Campo Indian Reservation in southeastern San Diego County.

Plaintiff, the County of San Diego ("the County") brought this action for declaratory and injunctive relief alleging that the Environmental Impact Statement ("EIS") prepared by the Federal Defendants does not meet the requirements of the National Environmental Policy Act, 42 U.S.C.A. §§ 4321 *et seq.* (1977) ("NEPA").

On October 15, 1993, this Court denied the County's Motion for Preliminary Injunction. The Federal Defendants and the Campo Band Defendants now both move for summary judgment. Because their claims overlap, the Court will address their motions simultaneously.

Defendants claim that they are entitled to summary judgment in their favor because the EIS prepared for the Project meets the requirements of NEPA, and the BIA decision approving the Project is sound.

The County vigorously opposes the motion, claiming that the EIS fails to meet the requirements of NEPA by 1) failing to evaluate reasonable alternatives to the Project, 2) failing to evaluate and disclose foreseeable environmental impacts of the Project, and 3) using faulty methodology to reach its conclusion that the Project can be adequately monitored to detect environmental hazards.

## I. Standard of Review

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the record shows no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). The burden then shifts to the nonmoving party to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To make such a showing, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue

772

for trial. *Id.* However, in considering this motion, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## B. Agency Compliance with NEPA

A district court's review of an agency action is limited. A district court may only set aside agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not according to the law." Administrative Procedure Act ("APA"), 5 U.S.C.A. §§ 706(2)(D), (A) (1982). *See also Half Moon Bay Fishermans' Marketing v. Carlucci,* 857 F.2d 505, 508 (9th Cir.1988).

■ In reviewing the BIA's compliance with NEPA, the court is limited by the fact that NEPA is essentially a procedural statute. *Oregon Environmental Council v. Kunzman,* 817 F.2d 484, 492 (9th Cir.1987). Under NEPA, a federal court may only look to insure that the agency in question has "considered the environmental consequences" of its action. *Strycker's Bay Neighborhood Council v. Karlen,* 444 U.S. 223, 227, 100 S.Ct. 497, 499, 62 L.Ed.2d 433 (1980). NEPA does not require that an agency raise environmental concerns above other legitimate considerations, but only requires that the environmental concerns be brought to the agency's attention. *Id.*

Accordingly, a reviewing court may not substitute its judgment for that of the agency concerning the prudence or wisdom of a proposed action. *Northwest Indian Cemetery Protective Association v. Peterson,* 795 F.2d 688, 695 (9th Cir.1985). Rather, the court must determine whether the EIS contains a "reasonably thorough discussion of the significant aspects of the probable environmental consequences." *California v. Block,* 690 F.2d 753, 761 (9th Cir.1982). If it does, the decision will not be disturbed.

■ The adequacy of the EIS is a legal question appropriate for summary judgment. *City of Angoon v. Hodel,* 803 F.2d 1016, 1021 (9th Cir.1986).

## C. Scope of Evidence on Review

■ Judicial review of agency action in the NEPA context is generally limited to a review of the administrative record. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743–44, 105 S.Ct. 1598, 1606–07, 84 L.Ed.2d 643 (1985); *Friends of Earth v. Hintz,* 800 F.2d 822, 828 (9th Cir.1986). However, some circumstances may justify expanding review beyond the record or permitting discovery. *National Audobon Society v. U.S. Forest Service,* 4 F.3d 832 (9th Cir.1993). The district court may inquire outside the administrative record when necessary to explain the agency's action. *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436. An allegation that an EIS has failed to mention or inadequately explored a serious environmental consequence may also permit the introduction of evidence outside the administrative record. *Id.* at 1437. Other reasons to permit additional evidence include when plaintiffs make a showing of agency bad faith, *Id.;* when special review procedures are prescribed by Congress, *Public Power Council v. Johnson,* 674 F.2d 791, 794–95 (9th Cir. 1982); or when it appears that the agency has relied on documents or materials not in the record. *Id.*

However, the court's inquiry outside the record is limited to determining whether the agency has considered all relevant factors or has explained its course of conduct or grounds of decision. *Friends of Earth v. Hintz,* 800 F.2d at 829.

■ In this case, the County claims that the Court should consider several documents which are not contained in the administrative record ("Record"). One of these is a document indicating that the United States Environmental Protection Agency has determined that the aquifer underlying the Project is the sole or principal source of drinking water for the region. However, the County has not made the requisite showing to justify the Court's expanding its review beyond the Record. Although the County suggests that the Court may consider this additional document because the EIS inadequately identifies and explores the potential impact of groundwater contamination on residents in the region, the EIS specifically states that the aquifer un-

derlying the Campo reservation is the region's only or primary source of water. EIS at S–8. This is the premise underlying much of the analysis contained in the EIS. Neither this nor any of the other documents presented indicate that the EIS failed to mention or inadequately considered serious environmental consequences justifying the Court's review beyond the Record.[1]

The County also demands that the defendants produce for review the lease between the Campo Band and Muht–Hei, Inc., a tribal corporation, and the sublease with the landfill developer, Mid–American Waste Systems, Inc. The County claims that the lease and sub-lease including their financial terms, are critical to explaining the agency's decision to proceed with the Project as a financial opportunity for the Campo Band. It also claims that the terms of the leases are relevant to determining whether the Band will have the financial resources to take the necessary mitigation measures should environmental damage occur.

The defendants respond, first, that the lease is already in the Record, with certain financial information redacted. They claim the financial information and sub-lease are not relevant to the environmental consequences of the Project or the agency's compliance with NEPA. Further, defendants claim that such information must be kept confidential so as not to threaten the Campo Band's competitive position in the landfill market. Defendants point out that NEPA permits withholding confidential commercial information from the public.[2]

The Court agrees with defendants that the financial information requested is confidential and not relevant to the adequacy of the EIS or the agency's compliance with NEPA. Final approval of the Project is conditioned on development of mitigation measures, as required by both federal and tribal regulations.[3] NEPA does not require that the EIS include an economic study of the Project and its ability to generate the revenues necessary to comply with the required mitigation plan.

The County has also requested that defendants identify the preparers of the EIS and their credentials. This information is already contained in the EIS and the Record. The EIS includes a list of its principal preparers. EIS, 11–1 to 11–3. The Record also contains numerous references to the experts who prepared the particular reports and reached the particular conclusions set forth in the EIS. Although the County has requested the names of those experts which disagreed with the County's expert, such information is irrelevant to an evaluation of the adequacy of the EIS.

The County has also requested discovery on the monitorability of the Project, claiming this is an issue of material fact. However, such discovery would only produce the opinions of the County's scientific experts, some of whom may disagree with the BIA's experts. Such opinions are irrelevant to the questions before this Court. It is well established that in determining whether an agency has complied with NEPA, the district court will not resolve a battle between scientific experts. *Inland Empire Public Lands Council v. Schultze,* 992 F.2d 977, 981 (9th Cir.1993).

Accordingly, the County has not made the requisite showing to justify the Court's expanding its review beyond the Record.

## II. BIA Compliance with NEPA

### A. EIS Analysis of Environmental Impact

#### 1. The Requirements of NEPA

Section 102(2) of NEPA provides, in relevant part, that for all "major Federal actions

---

1. Additional documents which the County claims the Court should consider include declarations of experts and of residents near the Campo Reservation, and a letter from the California Regional Water Quality Control Board to a resident opposed to the landfill.

2. NEPA provides that the Freedom of Information Act (FOIA), 5 U.S.C. § 552, controls the disclosure of NEPA documents and information to the public. 42 U.S.C. § 4332(2)(C). It pro-

vides that copies of the detailed statement and public comments are to be made available as provided by FOIA. FOIA specifically exempts from disclosure confidential commercial and financial information. 5 U.S.C. § 552(b)(4).

3. The Record of Decision ("ROD") also specifies that the landfill operator shall pay all costs to provide an alternative water supply, if necessary.

significantly affecting the quality of the human environment," a detailed environmental impact statement must be drafted, which includes a discussion of:

> (i) the environmental impact of the proposed action,

> (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

> (iii) alternatives to the proposed action,

> (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

> (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C. § 4332(2)(C).

The County claims that defendants have failed to meet NEPA's requirements, by inadequately identifying and analyzing the Project's adverse effects on the environment, specifically the impact on the underlying aquifer, and on air quality from the transport of waste to the landfill. In addition, the County claims the defendants failed to consider an adequate range of alternative sites for the Project.

Defendants disagree, contending that the EIS meets the requirements of NEPA.

**2. Impact on Groundwater**

 Defendants allege that the potential for the landfill to contaminate the groundwater was a particular concern of the BIA. The EIS acknowledges that groundwater impacts could be significant if leachate escapes from the landfill. EIS at 4–15.

As a result, the landfill is designed with a containment system, consisting of redundant liners to isolate the waste from the groundwater supply. As described in the EIS, the system is "well in excess of the federal and California regulatory requirements for Class III (non-hazardous waste) landfills." EIS at S–3. The liner system is designed to meet the requirements of the Campo Environmental Protection Agency ("CEPA"), a federally authorized tribal agency established to monitor the health, safety and environment of the Campo Indians. Its solid waste management regulations require redundant primary and secondary liner systems identical to that required by federal regulations for a Class I hazardous waste landfill. EIS at S–3.

The EIS also lists remediation measures which could be implemented if the liner system leaked. Before the BIA will approve construction, the developers must submit a full mitigation and landfill monitoring plan, as noted in the Record of Decision ("ROD"). The EIS ultimately concludes that with such measures in place, the impacts of the landfill on groundwater can be reduced to insignificance. EIS at 4–25 and 4–26.

In reaching its decision concerning the potential impact of the Project on groundwater, the BIA examined a voluminous Record. Documents in the Record include a hydrogeologic evaluation which identified an upper weathered zone which contains the majority of the groundwater. EIS at 3–30. The study also identified fractures in the underlying unweathered bedrock, which the study indicated could be monitored by locating wells in the immediate fracture zone. The Army Corps of Engineers and Science Applications International Corporation ("SAIC"), a technical consultant to the BIA, reviewed the study. Following extensive comments from both groups and responses from the BIA, the Army Corps found that "the major concerns have been addressed." Record at 10030.

In addition, the Record contained a study of risk assessment which found that the probability of failure of all the proposed landfill's protective mechanisms is extremely low. The study found that the liner system is more than twenty times less likely to fail in 150 years than landfill designed in accordance with the federal requirements. EIS at S–6. The EIS also contains an analysis of hypothetical leachate migration rates and geometries, and concludes that the proposal adequately mitigates the risks associated with even a catastrophic event. EIS at 4–16 to 4–17.

The BIA also reviewed documents from the state's Environmental Protection Agency, Cal–EPA, indicating that CEPA's solid waste regulatory regime is at least as stringent as California regulations. Record at 8424.

The Record also reflects that numerous groups opposed to the projects and their consultants submitted their comments and technical opinions on the Project. The BIA considered and responded to the opinions and concerns submitted, which are incorporated in the Record and in the EIS. Although there were ultimately disagreements between the BIA's scientific experts and those hired by opposition groups, such disagreements do not invalidate an EIS. *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir.1991).

### 3. Mitigation of Impacts

■ One of the County's principal arguments in support of its contention that the EIS is defective is that the EIS fails to establish in sufficient detail the mitigation measures which would be employed should a landfill liner failure occur. Specifically, the County objects that the BIA has failed to identify a particular alternative source of drinking water which would replace the source underlying the landfill if a leak contaminated the aquifer.

The EIS, however, does discuss a range of mitigation measures, and specifically identifies six possible remediation measures which may be employed if the redundant liner system were to leak. These include elimination of the source of leachate and repair of the liner system, pumping of wells to intercept contaminated groundwater flow, reinjection to enhance pumping and direct contaminated flow to intercept wells, use of a grout curtain, deepening or replacement of wells, and finally, replacement of the water supply with water from off-site sources. EIS at 4–25. Although the EIS does not specify a source of the replacement water, a complete mitigation plan need not be incorporated into the EIS. As the Supreme Court has said, "it would be inconsistent with NEPA's reliance on procedural mechanisms—as opposed to substantive, result-based standards—to demand the presence of a fully developed plan that will mitigate environmental harm before an agency can act." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 353, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989). In addition, the ROD requires that a full mitigation and monitoring plan be in place before

the Project is permitted to operate. ROD at 15–20; 38.

The County further objects that the EIS fails to identify all foreseeable impacts of a failure of the landfill liner system, including the impact on all residents, both in the United States and Mexico, who might be affected if the landfill contaminated the underlying aquifer. However, the EIS acknowledges the potential for contamination of the aquifer, and concludes that the possibility of such contamination is remote. EIS at 4–15. The Record also explains that contamination of the consultants, SAIC, determined that in the worst case event of a leak in the liner system, any released leachate would be confined to an area in the immediate vicinity of the landfill. EIS, Comments and Responses, Response D–659.

The EIS thus adequately considered the possibility of leakage and analyzed its potential impact. The EIS need not discuss in detail every possible negative effect to all those who rely upon the water supply in the extremely unlikely event that the aquifer is contaminated. The EIS's discussion of possible water contamination, monitoring procedures, and mitigation efforts demonstrates that the BIA satisfied NEPA's requirement that an agency take a "hard look" at the environmental impacts of its action. *See Kleppe v. Sierra Club*, 427 U.S. 390, 410, n. 21, 96 S.Ct. 2718, 2730 n. 21, 49 L.Ed.2d 576 (1975). It is noteworthy that NEPA does not require that the EIS contain a "worst case analysis." *Robertson v. Methow Valley*, 490 U.S. at 354, 109 S.Ct. at 1848.

■ The County also charges that the BIA's conclusions regarding the site's monitorability are inaccurate. The County's allegation, however, rests on its technical experts' disagreements with the experts retained by the BIA. However, as stated previously, disagreement between experts does not invalidate an EIS. *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir.1991).

### 4. Impacts on Air Quality

The County further alleges that the EIS is inadequate because it fails to disclose and evaluate the air quality impacts of long haul

waste transportation. However, the EIS does include an analysis of the impacts of hauling waste both by truck and by rail. *See* EIS at 4–84 to 4–95. The County argues that this analysis is necessarily inadequate, because the BIA failed to analyze alternative sites for the landfill which are closer to large sources of waste, such as Los Angeles. The Court finds, for reasons discussed below, that the failure to analyze such alternatives does not render the analysis of air impacts insufficient.

### B. Analysis of Alternative Sites

■ One of the County's principal charges is that the BIA failed to analyze a sufficient number of alternative sites for the landfill, as required by NEPA, because the agency limited its review to sites on the Campo Band reservation.

■ NEPA requires that the EIS analyze alternatives to the proposed action. 42 U.S.C. § 4332(2)(C). The standard of review of an agency's compliance with this mandate is the "rule of reason." *Headwaters, Inc. v. Bureau of Land Management,* 914 F.2d 1174, 1180 (9th Cir.1990). This standard requires an agency to "set forth only those alternatives necessary to permit a reasoned choice." *Id.; see also Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1519–20 (9th Cir.1992). Accordingly, the range "need not extend beyond those alternatives reasonably related to the purposes of the project." *Trout Unlimited v. Morton,* 509 F.2d 1276, 1286 (cited in *Methow Valley Citizens Council v. Regional Forester,* 833 F.2d 810, 816 (9th Cir.1987), *reversed on other grounds, sub nom. Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989).) As the Court said in *City of Angoon v. Hodel,* 803 F.2d 1016, 1021 (9th Cir.1986), "[w]hen the purpose is to accomplish one thing, it makes no sense to consider the alternative ways by which another thing might be achieved."

Here, the purpose of the Project is to provide a significant economic development opportunity for the Campo Band. EIS at S–11. The Secretary of the Interior and the BIA are responsible for promoting self-determination and self-sufficiency among Indian Tribes. Consistent with this responsibility,

the BIA is charged with implementing the Indian Self–Determination and Education Assistance Act, 25 U.S.C. § 450K, and the Indian Finance Act, 25 U.S.C. § 1461. The Indian Finance Act was specifically enacted to "help develop and utilize Indian resources, both physical and human, to a point where the Indians will fully exercise responsibility for the utilization and management of their own resources …" 25 U.S.C. § 1451. Because the Project was designed to further these goals, the BIA reasonably limited the range of alternative sites to those located on the Reservation only. EIS at 1–10 to 1–13, 2–30 to 2–37.

Contrary to the County's assertion, the BIA considered and rejected other alternatives for economic development, having found that they would not meet the economic goals of the Campo Band. EIS at 2–35 to 2–37.

Thus although the BIA did not consider landfill sites off the reservation, it did properly consider and analyze a reasonable range of alternatives for meeting the goals of the Project. This is all that NEPA requires.

### C. Analysis of Unavoidable Impacts

The County also contends that the EIS failed to identify and evaluate the unavoidable impacts of the Project on groundwater. This argument is without merit. The EIS identifies many potential impacts on groundwater but concludes that these can be reduced to an insignificant level. The agency's experts apparently believed that there were no significant unavoidable impacts.

### D. Adequacy of Information Provided to Public

■ The County further charges that the defendants failed to provide the public and other agencies all of the evidence upon which their decision was made. However, NEPA does not require that all documents pertaining to a project be disclosed to the public. The agency simply must provide an EIS which shows that environmental values and consequences have been considered. *Andrus v. Sierra Club,* 442 U.S. 347, 350, 99 S.Ct. 2335, 2337, 60 L.Ed.2d 943 (1979). Those documents not released, such as the sublease between Muht–Hei and Mid–Ameri-

can Waste Systems are, as explained earlier, not relevant to the BIA's consideration of environmental consequences of the Project and contain confidential commercial information. The EIS and its accompanying volume of comments and responses indicates that all information relevant to the environmental impact of the Project were disclosed to the public and to other agencies, and that the BIA considered and responded to their comments. The BIA has thus met the public disclosure requirements of NEPA.

The Court finds that NEPA's requirements have been satisfied. Specifically, the EIS provides sufficient detail to inform the decisionmakers of the environmental impact of the Project. The BIA's approval of the Project was neither "arbitrary or capricious," nor undertaken "without observance of procedure required by law."

Accordingly, **Defendants' Motions for Summary Judgment are GRANTED.**

**IT IS SO ORDERED.**